63 485
85h 501

ABRAM LAPHAM, commissioner of highways for the town of Yorkshire, Cattaraugus county, vs. ALFRED RICE, commissioner of highways for the town of Sardinia, Erie county.

An action by a town officer of one county, against a town officer of another county, where the plaintiff sues and the defendant is sued in his official capacity, cannot be commenced before a justice of the peace of either county.

Nor can such an action be tried in the circuit court of either county, though originally commenced in the Supreme Court, if the objection be taken at the proper time and in the proper manner.

The only demurrer to a complaint which is allowed in a justice's court, by the present law, is when the complaint is not sufficiently explicit to enable the defendant to understand it, or when it contains no cause of action. Neither of these causes of demurrer applies to an objection, that the action is brought in a wrong county.

Although in a summons, issued by a justice of the peace, in an action by town officers of one county against town officers of another county, the official titles of the respective parties are stated, yet if it be not stated that the plaintiff sues, or the defendant is sued, in his official capacity, the statement of the official titles of the parties operates as a mere *descriptio personæ*.

As such, it is mere surplusage, and will not prevent the plaintiff from complaining against the defendant in regard to a mere private matter existing between the two; and unconnected with the official capacity of either. Consequently, a dismissal of the suit before a complaint is put in, showing that the action is connected with the official character of the parties, would be erroneous.

There seems to be no method by which, in a justice's court, the defendant, in a case where the action is commenced in a wrong county, can avail himself of the objection, except as a ground of nonsuit on the trial, as at common law, where the objection is not open to a demurrer. *Per* TALCOTT, J.

On a new trial, the party respondent, on appeal from a justice's court, cannot be confined to the objections he made in the justice's court; those objections not being in any manner made known to the appellate court.

On a new trial in the appellate court, as upon any other new trial, the parties are entitled to take any ground permissible under the pleadings.

In a justice's court, the objection that the action is brought in a wrong county, if well founded, must necessarily defeat the action itself.

APPEAL from a judgment rendered for the plaintiff, at the Cattaraugus circuit, on a trial by the court, without a jury.

Lapham *v.* Rice.

*A. J. Knight,* for the appellant.

I. The court had no power to allow an amendment of the complaint by striking out the name of Hudson Waite as co-plaintiff. This amendment was duly excepted to. This court occupied the position of the county court, and the county court can have no greater power to allow such an amendment than had the justice of the peace. Courts of justices of the peace have had no power, before or since the Code, in actions on contracts, to amend the process or pleadings by striking out the name of a party, except in case of a defence operating as a personal discharge, as infancy, lunacy, &c. (*Webster* v. *Hopkins,* 11 *How. Pr.* 140. *Hartness* v. *Thompson,* 5 *John.* 160. *Hall* v. *Rochester,* 3 *Cowen,* 374. *Gates* v. *Ward,* 17 *Barb.* 424. *Gilmore* v. *Jacobs,* 48 *id.* 336.) The Code provides, in section 8, that the first four titles of the second part (sections 69, 126, inclusive) relate to actions in all the courts in the State, and the other titles to actions in Supreme, county court, &c., expressly omitting justices' courts; also subdivision 15, section 64, of the Code provides, "that the provisions of this act, respecting forms of action, parties to actions, rules of evidence, the times of commencing actions, shall apply to justices' courts." Hence, upon the principle of *expressio est unius exclusio alterius,* neither section 173 nor 274 apply to justices' courts. Nor does that part of section 64, subdivision 15, above referred to, in reference to parties to actions, apply to an amendment by dropping a party, as there is a specific title, to wit, title 3, part 2, in reference to parties to actions, to which that part of subdivision 15, section 64, refers. The case of *Ackley* v. *Tarbox,* (31 *N. Y.* 564,) upon which the counsel for the respondent must rely, was an action of tort, in which different rules have always been held in reference to the power of amendment as to the parties in the action, from those in actions on contracts; and though the opinion of Judge Davies, in that case, refers to section 173 of

Lapham *v.* Rice.

the Code, as applicable to actions in justices' courts, yet it was a mere extra *dictum,* and not the point on which the case was decided. That was an action brought by the wife for the conversion of her cow, the husband being joined as a nominal party only, before the practice was settled, no joint cause of action being set up, and the decision was simply that the husband being a nominal party only, and his name producing no embarrassment to the defendants, the wife could recover alone. On the contrary, the present action is based on a contract liability to the plaintiffs jointly, and issue taken thereon. Subdivision 5, section 366 of the Code, refers to amendments in reference to the cause of action, not in reference to the parties. Before the amendment in 1865, to said subdivision 5, section 366, it was held that the county court, on a new trial, had not the power to amend the pleadings, even in cases where the justice of the peace could grant the amendment when the case was before him ; and this amendment in 1865, was made to give the county court the same power as the justices' court originally had in the same action. (*Savage* v. *Cock*, 17 *Abb.* 403.) It would be absurd to give the county court, on appeal, the power of amendment which the court in which the action originated never possessed. For the same reasons the court erred in directing judgment in favor of one of the plaintiffs, which was duly excepted to. Dropping a party is not an amendment of the pleadings. (*Billings* v. *Baker*, 6 *Abb.* 213.)

II. The court erred in refusing the defendant's motion to nonsuit the plaintiff, on the grounds that the plaintiffs should have brought separate actions against the defendant. The misjoinder of the plaintiffs can be taken advantage of on motion for a nonsuit. (2 *Wait's Law and Pr.* 276. *Graham's Pr.* 94, 95, 2d ed. *Dob* v. *Halsey*, 16 *John.* 33.) Chitty says : If the objection do not appear on the face of the pleading, it would be a ground of nonsuit at the trial. (1 *Chitty*, 76.) That they were improperly

joined, see *Corey* v. *Rice*, (4 *Lans.* 142.) The motion for a nonsuit was made before the plaintiff's counsel asked to amend, by dropping one of the plaintiffs, and should have been granted.

III. The court erred in refusing to nonsuit the plaintiffs, on the ground that the evidence did not show a cause of action. 1. There was no joint cause of action established, as the commissioners paid the money from the separate funds of each town. (1 *Chitty's Pl.* 11. *Gould* v. *Gould*, 8 *Cowen*, 168.) 2. It is submitted that the three towns should equally bear the expense incurred on the bridge. When this cause was submitted before, to the general term, Judge MULLIN expressed the opinion that Sardinia should bear one half the expense; but the decision of the general term was simply that the plaintiffs were improperly joined, and a new trial ordered on that ground alone. (4 *Lans.* 142.) Besides, the learned judge overlooked the amendment to the statute in 1857. The statute, as amended, reads: "Whenever two or more towns shall be liable to make or maintain any bridge or bridges, the same shall be built and maintained at the joint expense of said towns, without the reference to town lines." (*Laws of* 1841, *ch.* 224, § 1, *as amended by Laws of* 1857, *ch.* 383.) This statute makes them jointly liable; hence they would be equally liable unless the words "without reference to town lines," qualifies that liability. These words should not be construed as obliterating the line between Yorkshire and Ashford only, but to the lines between all the towns, if to any. Then the whole territory within the three towns would bear the expense, which is the same as the towns paying equally. The bridge is the joint property of the three towns, no one of them owning any particular part. The words of the statute, "without reference to town lines," should be construed so as to make each town liable, without reference to the amount of the bridge in each town. Hence the finding of said

Lapham *v.* Rice.

court, as a conclusion of law, that Sardinia was bound to pay one half the expense of building the bridge, was erroneous. 3. It should affirmatively have appeared that the defendant had funds in his hands as commissioner, or the contract is not binding upon him in his official capacity, nor upon the town he represents. (*The People* v. *Adsit*, 2 *Hill*, 619. *Bartlett* v. *Crozier*, 17 *John.* 439. *Barker* v. *Loomis*, 6 *Hill*, 463. *Garlinghouse* v. *Jacob*, 29 *N. Y.* 297.) 4. It is further submitted that when a joint obligor assumes to pay the debt of his co-obligor, he should pay it all, not simply a part of it. If he could pay one half, he could, with the same reason, pay one twentieth, one thirtieth or one hundredth part of it, and then maintain an action as often as he made each payment. It cannot be said that the plaintiff was liable to the contractor for one third, and that justified his payment of that amount, as the parties were severally liable to the contractor, under the statute, for the whole amount. (*Laws of* 1841, *ch.* 225, § 2. *Fish* v. *Folley*, 6 *Hill*, 54.) 5. It is further submitted that the plaintiff should have submitted his claim to the town board of the town of Sardinia. (*Brady* v. *Supervisors of New York*, 10 *N. Y.* 260. *Martin* v. *Supervisors of Green Co.*, 29 *id.* 645. *Bell* v. *Town of Esopus*, 49 *Barb.* 506.) Officers of municipal corporations are liable: 1st. For their torts. 2d. Where the statute expressly makes them liable. In other cases the claim is against the corporation they represent. This action is not based on a statute liability to the contractor, but on a liability to a joint debtor, resulting from his payment of the joint debt. In other words, it is a common law, and not a statute liability, if any liability exists. Besides, chapter 639 of the laws of 1857, makes provision that a commissioner of highways may proceed by motion at a special term of the Supreme Court, and obtain an order compelling commissioners of adjoining towns to unite in building bridges, to be paid out of funds in their hands, and what expense

was not so paid, to bring in an account therefor to the supervisor, and the board of supervisors shall levy a tax on the town for its share. Thus the claim should have been presented, either to the board of town audit, or directly to the board of supervisors.

IV. The court erred in refusing to nonsuit the plaintiff, on the ground that the action was improperly brought in Cattaraugus county. "Actions by the county or town officers of one county, against the town or county officers of another county, in their official capacity, shall be laid in some county adjoining the county of the defendants, except the county of the plaintiffs." (*Laws of* 1842, *ch.* 301. 3 *R. S.* 634, *5th ed.*) This could be taken advantage of under the general issue. (3 *R. S.* 634, § 9.) It is evident that section 125 of the Code has no application to actions commenced in a justice's court.

*S. S. Spring*, for the respondent.

I. Upon the trial of this action at the circuit court, the court, upon the application of the plaintiffs, allowed the complaint to be amended by striking out the name of Hudson Waite as one of the plaintiffs in this action. Did the court commit an error in so doing? Probably the court, at the circuit, had the same jurisdiction to grant amendments to pleadings in this case that the county court would have had, if the action had been tried in that court, but no greater; as the action originated in a justice's court, and was certified by the county judge. In the case of *Ackley* v. *Tarbox*, (31 *N. Y.* 564,) the action originated in a justice's court, and was brought for the conversion of one cow. The cow was the individual and separate property of one of the plaintiffs, who was a married woman, but her husband was joined with her in the action, as co-plaintiff. The plaintiffs, in a justice's court, obtained judgment for the value of the cow converted. An appeal was taken, upon questions of law only, to the

Lapham *v.* Rice.

county court, where the judgment was affirmed; but upon an appeal to the Supreme Court, the judgment was reversed, upon the ground that the husband should not have been joined as co-plaintiff. An appeal was then taken to the Court of Appeals, and that court reversed the judgment of the Supreme Court, and affirmed that of the county court and the justice's court. Judge Davies, in giving the opinion of the court, after remarking that the husband was improperly joined as co-plaintiff, said: "Section 173 of the Code was framed to meet a case like the present. It declares that the court may, both before and after judgment, in furtherance of justice, amend any pleading, process or proceeding, by adding or striking out the name of any party. As soon as the objection was taken, that the husband was an unnecessary party, as he clearly was, it was the duty of the court to have stricken his name from the proceedings in the action. It can now be done, and the judgment stand as it ought, a judgment in favor of the wife for injury to her personal property." The entire court concurred, excepting Judge Johnson, who wrote a dissenting opinion, to the effect that the section of the Code above referred to had no application to justices' courts. As the appeal in the case last cited was from a judgment of a justice of the peace, upon questions of law only, it directly involves the jurisdiction of such justice to grant an amendment to the complaint by striking out the name of one of the plaintiffs in the action. That the justice had no such power independently of the Code, even in an action for a tort, is entirely apparent. (*Cowen's Treatise*, 557, 2d ed.) The Court of Appeals expressly placed its decision upon the ground that the provisions of the Code relating to striking out names of parties, and rendering judgment for or against one or more of several plaintiffs, and for or against one or more of several defendants, is applicable to justices' courts. There is no decision of the Court of Appeals which has been made since the de-

cision of the case of *Ackley* v. *Tarbox*, (*supra*,) which professes to overrule that case, or is at all inconsistent with it.

II. But the appeal, in this case, was for a new trial in the county court, not to correct any errors that the justice committed herein, by an appeal upon questions of law. The Code expressly makes all the provisions contained therein as to amendments, by striking out the names of parties, as well as the provision that judgment may be given for or against one or more of several plaintiffs, applicable to county courts, upon such new trials therein. Section 8 of the Code, provides " that this act is divided into two parts; the first relates to the courts of justices and their jurisdiction; the second relates to civil actions commenced in the courts of this State after the 1st day of July, 1848, and is distributed into fifteen titles. The first four relate to actions in all the courts in the State, and the others to actions in the Supreme Court, in the county courts, &c." The section does not provide that the entire second part of the Code shall only be applicable to the class of actions which are originally commenced in that court, as distinguished from those that are brought there by appeal from justices judgments; but it says all actions in the county courts. Section 366, subdivision 4, provides that " Every issue of fact so joined, or brought upon an appeal to the county court, shall be tried in the same manner as in actions commenced in the Supreme Court." Subdivision 5, of the same section, provides " That the court shall have the same power over its determinations, and the verdict of the jury, and shall render judgment thereon in the same manner as the Supreme Court, in actions pending therein." The general term of the Supreme Court have decided that in new trials in the county court, on appeals from justices' judgments, judgment in the county court, upon such new trial, can be rendered in excess of $200 for damages, and therefore in excess of the justices' jurisdiction as to the amount of the judgment for damages.

Lapham *v.* Rice.

III. The defendant objected upon the trial to the introduction of the contract for constructing the bridge in question, on the grounds. 1st. It does not appear to have been executed by the parties, as commissioners of highways. 2d. It appears to have been executed by the respective towns, as towns. The proof shows that all of the persons who acted for their respective towns in making such contract, were in fact highway commissioners for such towns, and that the nature of the contract is such as they, as such commissioners, had in law a right to make. The parol evidence also shows, that such commissioners did in fact make the contract in their capacity of highway commissioners. This case has been before this court for adjudication, once before ; and this same question was then adjudicated by this court. Upon that occasion his honor Justice Mullin, in giving the opinion of the court, remarked : " I am of the opinion that the written contract was binding on the commissioners of the towns. If, however, it was void, they were unquestionably bound by the contract as made by parol, and being valid, all these commissioners were liable upon it."

IV. It is claimed that this action could not be brought in Cattaraugus county. 1. The Code provides, (see section 124,) " That actions for the following causes, must be tried in the county where the cause, or some part thereof, arose, subject to the like powers of the court to change the place of trial." Subdivision 2, of said section, " Against a public officer, or a person specially appointed to execute his duties." It arose in a part of Cattaraugus county. 2. The question was not raised in the justices' court. The defendant by appearing, and proceeding to the trial of the action, in the justices' court without raising the objection, did thereby waive the same, and after having once waived the same, it was not afterwards available to him upon the trial in the county court. (*Stevens* v. *Benton*, 39 *How. Pr.* 13.)

V. What proportion, relatively, of the expenses is Sardinia bound to incur in building and maintaining the bridge in question? The theory of the law seems to be that each town shall maintain its own roads and bridges. And as one half of the entire bridge in question is in the town of Sardinia, it seems just and equitable that that town should incur one half the expenses of maintaining such bridge. Would there be any doubt whatever as to that town being liable to one half of such expenses, provided the entire other half of such bridge was only in one of the other two towns? Does the circumstance that the other half of said bridge happens to be in two, instead of only in one town, affect at all the relative proportion of the expenses which Sardinia should pay towards the maintainance of said bridge? Upon what principle can such a circumstance enure to the benefit of Sardinia? For, notwithstanding such circumstance, one half of the entire creek, over which such bridge is maintained, is in the town of Sardinia. Chapter 383, section 1, of the laws of 1857, is not inconsistent with such liability. That act makes the several towns jointly and severally liable for the entire expense of making and maintaining bridges over streams of water dividing such towns. The act makes such towns jointly and severally liable to those who have been employed by their highway commissioners to build or repair such bridges. (*Harris* v. *Houck,* 57 *Barb.* 619.) The act, however, does not define how much, relatively, as between themselves, the several towns shall pay. This court, however, when the case was before it, adjudicated upon that question, and decided that Sardinia was liable to pay one half of all such expenses. (See opinion of Justice Mullin.)

VI. The court at the circuit only gave judgment for the amount which the commissioner for the town of Yorkshire had paid in excess of one quarter, for building the bridge, and the interest thereon from the time of such

Lapham *v.* Rice.

payment. Inasmuch as each of the commissioners was jointly and severally liable to the contractor to pay the whole amount for building such bridge, whatever sum either of said commissioners paid in excess of the relative proportion which, as between themselves, he was bound to pay, he is entitled to recover of the commissioner who has been guilty of default in paying his due proportion, upon the theory that the commissioner making such excessive payment, paid the same as surety for the commissioner for whose benefit such excessive payment was made.

*By the Court,* TALCOTT, J. This action was originally commenced before a justice of the peace of the town of Machias, in the county of Cattaraugus. It was originally brought by John Corey, commissioner of highways of the town of Yorkshire, in Cattaraugus county, and Hudson Waite commissioner of highways of the town of Ashford, in the same county, against Alfred Rice, commissioner of highways of the town of Sardinia, in the county of Erie.

The suit originated in the following facts: The town of Sardinia, in Erie county, is situated on one side of the Cattaraugus creek. On the other side, and opposite to Sardinia, are the towns of Yorkshire and Ashford, in Cattaraugus county. Each of the three towns extends to the center of the creek. A highway divides the towns of Yorkshire and Ashford, and extends across the creek into and through Sardinia. A bridge across the creek constitutes a part of this highway. The entire north half of the bridge is in the town of Sardinia; the south half is in the towns of Ashford and Yorkshire. The highway commissioners of the three towns jointly entered into a contract with one L. Corey, whereby he agreed to construct the bridge in question at a certain price. The contractor performed the work, and each of the commis-

sioners paid to him one third of the contract price. The commissioners of Yorkshire and Ashford being afterwards advised that the town of Sardinia was liable to pay one half, instead of one third, of the expense of constructing the bridge, brought this action to recover the proportionate excess paid by the commissioners of the towns of Ashford and Yorkshire respectively, over and above the amount for which it is claimed such towns are respectively liable. The action was tried before the justice, and he rendered a judgment against the plaintiffs for costs. The complaint of the plaintiffs, before the justice, demanded judgment for $200. The plaintiffs appealed to the county court of Cattaraugus county, for a new trial.

Upon what ground judgment was rendered for the defendant, before the justice, does not appear, as the testimony and proceedings on the trial are not returned. While the cause was in the county court, undetermined, Mr. Spring, who had been counsel for the plaintiffs, became the county judge of Cattaraugus county, and thereupon certified the case into the Supreme Court, under the statute. (Code, § 30.) In the justice's court, the defendant answered by a general denial, and also in his answer claimed that the plaintiffs could not maintain the action jointly. After the appeal, the cause was once tried in the county court, where the plaintiffs recovered judgment, which, on appeal to the general term of this court, was reversed upon the ground that the plaintiffs, conceding that each had paid in excess of the liability of his town toward the expense of constructing the bridge, could not, nevertheless, maintain a joint action to recover the excess which each had paid. Since the case has been in the Supreme Court, the now plaintiff, Abram Lapham, having become commissioner of highways of the town of Yorkshire, in place of Corey, was substituted as one of the plaintiffs in place of Corey, who had died. The action was afterwards tried at the circuit in Cattaraugus county.

Lapham *v.* Rice.

And on the trial an amendment of the complaint was allowed, whereby the name of Hudson Waite, as plaintiff, was stricken out, and the complaint was dismissed as to him, (see *Ackley* v. *Tarbox*, 31 *N. Y.* 564,) and the trial proceeded in the name and behalf of Abram Lapham as commissioner of the town of Yorkshire, in Cattaraugus county, as sole plaintiff, and a judgment was ordered in his behalf for $27.11, the excess paid by the commissioner of the town of Yorkshire over one quarter of the expense of building the bridge, besides costs. On this trial, the defendant moved for a nonsuit, stating amongst other grounds, that the action was improperly brought in the county of Cattaraugus. The defendant appeals from the judgment rendered against him at the Cattaraugus circuit, and amongst other objections claims that the plaintiff should have been nonsuited, because the action was improperly brought in Cattaraugus county, and therefore could not be maintained. To this objection we do not discover any satisfactory answer. By chapter 301 of the laws of 1842, it is provided that "actions by the county or town officers of one county, against the town or county officers of another county, in their official capacity, shall be laid in some county adjoining the county of the defendant except the county of the plaintiffs."

This is an action by a town officer of the town of Yorkshire, in Cattaraugus county, and is brought against a town officer of another county. The plaintiff sues, and the defendant is sued in his official capacity. The case is precisely within the act of 1842, referred to, and the justice of the peace in Cattaraugus county had no power or jurisdiction to entertain such a suit, nor could it have been tried in the circuit court of Cattaraugus county, if the suit had been originally commenced in this court, and the objection had been taken at the proper time and in the proper manner. It is stated in the points of the respondent's counsel, that the question was not raised in the

Lapham *v.* Rice.

justice's court, and he claims that for that reason it was waived. Conceding, for the purpose of the argument, that the official sued contrary to the provisions of the act referred to, may waive the objection so as to confer upon a justice in the plaintiff's county, jurisdiction to try the action, the inquiry arises, what constitutes a waiver. At the common law where the venue, in a local action, was laid in a wrong county, and the objection appeared upon the declaration or record, it could be reached by demurrer, and perhaps in no other manner; but where the objection could not be reached by demurrer, it was a ground of nonsuit. (12 *Wend.* 51. *Id.* 265.) The objection now raised to the maintainance of the action did, it is true, appear on the face of the complaint in the justice's court; but the only demurrer to a complaint which is allowed in that court, by the present law, is when it is not sufficiently explicit to enable the defendant to understand it, or when it contains no cause of action. Neither of these causes of demurrer applies to an objection that the action is brought in a wrong county.

Although in the summons in this case the official titles of the respective parties are stated, yet it is not stated that the plaintiff sues, or the defendant is sued in his official capacity; upon the well settled rule the statement of the official title of the parties in this case strictly operated as a mere *descriptio personœ.* As such it was mere surplusage, and would not have prevented the plaintiff from complaining against the defendant in regard to a mere private matter existing between the two, and unconnected with the official capacity of either.

Consequently, a dismissal of the suit before the complaint was put in, which showed that the action was connected with the official character of the parties, would have been erroneous. There seems, therefore, at present to be no method by which, in a justice's court, the defendant, in such a case as this, can avail himself of the

objection, except as a ground of nonsuit on the trial, as at common law, where the objection was not open to a demurrer.. The counsel for the appellant, as before stated, says that the defendant did not make this objection, on the trial before the justice. This may be so, but the record does not show that such was the case. In this case the justice was not required to return, and has not returned, what took place on the trial.

Besides, on a new trial, the party respondent, on appeal from a justice's court, cannot be confined, on the trial, to the objections he made in justice's court. Those objections are in no manner legally made known to the appellate court. On a new trial there, as upon any other new trial, the parties are entitled to take any ground permissible under the pleadings. The defendant never had any occasion to raise this objection, until after the amendment was allowed by which it was permitted to strike one of the joint plaintiffs from the record, and proceed with the suit in the name of the other; as the misjoinder which had, up to that time, existed was sufficient, as was held by this court, to defeat the action.

In actions in the Supreme Court, if the county designated in the complaint for the trial be not the proper county, the action may, nevertheless, be tried there, unless the defendant shall, before the time for answering expires, demand, in writing, that the trial be had in the proper county. (*Code*, § 126.)

This obviously can have no application to a justice's court. No county is designated in that court as the place of trial, and it has no power to change the venue. In that court, the objection that the action is brought in a wrong county, if well founded, must necessarily defeat the action itself.

The judgment must be reversed; and as the objection goes to the foundation of the action, and cannot be ob-

viated, there is no necessity or propriety in putting the parties to the expense of a new trial.

Judgment reversed, and judgment ordered for the defendant, with costs.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872. *Johnson, Talcott* and *Barker*, Justices.]